35 So.3d 476 (2010)
STATE of Louisiana In the Interest of T.D.S. and C.R.S.
No. 45,390-JAC.
Court of Appeal of Louisiana, Second Circuit.
April 23, 2010.
John Bradley Smitherman, for Appellant, Sharee Divette South.
Pamela Harper Jacob, for Appellee, State of Louisiana, through the Department of Social Services.
Joseph Christopher Seyler, for Appellees, Minor Children T.D.S. and C.R.S.
Wilbert Dale Pryor, for Appellee, Father, Carl Lewis, and Curator ad hoc for any unknown father.
Before DREW, MOORE and LOLLEY, JJ.
DREW, J.
S.D. South ("South") appeals the termination of her parental rights relative to *477 her biological minor children, T.D.S., born January 11, 2007, and C.R.S., born April 17, 2008 ("the children"). Overwhelming evidence was adduced reflecting South's stunted or nonexistent parenting skills. The trial court justifiably found clear and convincing evidence that termination was appropriate, and we affirm in all respects.

FACTS
The sad facts are undisputed. In December of 2005, two and three years prior to the birth of these children, two other offspring of South had been taken from her, despite the best efforts of the Department of Social Services ("the Department"). These older children were placed with their paternal aunt.
The two children at issue here, T.D.S. and C.R.S., were born 15 months apart, apparently fathered by Carl Lewis. Each of the children was addicted to cocaine at birth, as was South.
T.D.S. was taken from his parents by Instanter Order on January 26, 2007. On April 11, 2007, T.D.S. was adjudicated as a child in need of care and continued in the custody of the Department.
On April 18, 2008, C.R.S. was taken from the parents by Instanter Order. On August 14, 2008, C.R.S. was adjudicated as a child in need of care and continued in the custody of the Department.
The Department tried to familiarize South with T.D.S. and C.R.S., to no avail. All efforts of the Department were rejected by the mother.
The Department went to great lengths to put together reasonable case plans seeking reunification of the children with their mother.[1] South failed to cooperate in every way possible. It is clear from this record that there is no chance for rehabilitating South as a parent.
As the months piled up, with absolutely zero progress by South, the Department decided to apply for termination of her parental rights relative to T.D.S. and C.R.S.
Trial was had on July 9, 2009. South did not attend, even though she had been served with notice over two months before the trial date. By the time of trial, South had not seen, written, called, or supported T.D.S. for 22 months, and she had not seen C.R.S. for over a year. About a month before trial, a case worker visited South to ask if she wanted to visit with the children. She responded, "No, not at this time."
During the infancy of T.D.S. and C.R.S., the Department set up many opportunities for South to visit and possibly bond with the children. South wasted these visitation opportunities and chose to remain a stranger to them. Both children are now in pre-adoptive homes.

ARGUMENT

Lack of Compliance with La. Ch. C. art. *478 672.1.[2]
South alleges that the trial court erred in terminating her parental rights without requiring the Department to prove that reunification efforts were not required by this article.
We have recently examined this precise issue,[3] concluding that the wording in La. Ch. C. art. 672.1 is permissive, not mandatory, and simply does not apply when the Department is pursuing termination via La. Ch. C. art. 1015.[4]

*479 Failure to Prove Lack of Parental Compliance with the Case Plan

This argument has no legs whatsoever. South does not visit, does not come to juvenile court, does not stay out of criminal court, will not attend her substance abuse improvement, parenting, and mentoring classes, and refuses to stay away from drugs. Since the birth of T.D.S. and C.R.S., she has given birth to another son, who is in the custody of the state of Georgia. Her life has been one bad choice after another. Even with considerable state resources at her disposal, she chose to keep inching down her wormhole of drugs and unwanted children.
Though South has had numerous "wake-up" calls in the last few years, nothing indicates at this point that she has the remotest intention of discontinuing her aberrant and destructive lifestyle.
The best interest of these children clearly is to be adopted in a loving home. No one has ever said that all mothers should be perfect, but South appears to be the worst of the worst.

CONCLUSION
These children need a chance at life, and the only way to secure that for them is adoption. We find the trial court chose the only possible choice for the sake of these kids. The parental rights of South were lawfully terminated.

DECREE
The judgment terminating South's parental rights as to both children is AFFIRMED.
NOTES
[1] The case plans presented these straightforward requirements:

1) Submit to a substance abuse assessment and complete any recommended program;
2) Submit to random drug screens;
3) Avoid criminal activity;
4) Obtain and maintain stable and clean housing, with working utilities;
5) Attend and complete parenting and mentoring classes;
6) Attend and participate in the children's medical appointments;
7) Provide support for her children;
8) Keep the case manager informed as to her employment and residence situation;
9) Provide any family contacts interested in being placement resources for the children; and
10) Visit the children (two Wednesdays per month, for an hour per visit).
[2] Art. 672.1. Reunification efforts determination

A. At any time in a child in need of care proceeding when a child is in the custody of the department, the department may file a motion for a judicial determination that efforts to reunify the parent and child are not required.
B. The department shall have the burden of demonstrating by clear and convincing evidence that reunification efforts are not required, considering the health and safety of the child and the child's need for permanency.
C. Efforts to reunify the parent and child are not required if a court of competent jurisdiction has determined that:
(1) The parent has subjected the child to egregious conduct or conditions, including but not limited to any of the grounds for certification for adoption pursuant to Article 1015.
(2) The parent has committed murder or manslaughter of another child of the parent or has aided or abetted, attempted, conspired, or solicited to commit such a murder or manslaughter.
(3) The parent has committed a felony that results in serious bodily injury to the child or another child of the parent.
(4) The parental rights of the parent to a sibling have been terminated involuntarily.
D. If the court determines that reunification efforts are not required, it shall document that determination by written findings of fact. A permanency hearing, which considers in-state and out-of-state permanent placement options for the child, may be conducted immediately and shall be conducted within thirty days after the determination.
[3] In the Interest of R.L.T., 45,168-JAC (La. App. 2 Cir. 1/27/10), 30 So.3d 1085. We adopt the reasoning of R.L.T., as it applies to this case.
[4] Art. 1015. Grounds

The grounds for termination of parental rights are:
(1) Conviction of murder of the child's other parent.
(2) Unjustified intentional killing of the child's other parent.
(3) Misconduct of the parent toward this child or any other child of the parent or any other child in his household which constitutes extreme abuse, cruel and inhuman treatment, or grossly negligent behavior below a reasonable standard of human decency, including but not limited to the conviction, commission, aiding or abetting, attempting, conspiring, or soliciting to commit any of the following:
(a) Murder.
(b) Unjustified intentional killing.
(c) Aggravated incest.
(d) Rape.
(e) Sodomy.
(f) Torture.
(g) Starvation.
(h) A felony that has resulted in serious bodily injury.
(i) Abuse or neglect which is chronic, life threatening, or results in gravely disabling physical or psychological injury or disfigurement.
(j) Abuse or neglect after the child is returned to the parent's care and custody while under department supervision, when the child had previously been removed for his safety from the parent pursuant to a disposition judgment in a child in need of care proceeding.
(k) The parent's parental rights to one or more of the child's siblings have been terminated due to neglect or abuse and prior attempts to rehabilitate the parent have been unsuccessful.
(l) Sexual abuse, which shall include, but is not limited to acts which are prohibited by R.S. 14:43.1, 43.2, 80, 81, 81.1, 81.2, 89 and 89.1.
(4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
(a) For a period of at least four months as of the time of the hearing, despite a diligent search, the whereabouts of the child's parent continue to be unknown.
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.
(6) The child is in the custody of the department pursuant to a court order or placement by the parent; the parent has been convicted and sentenced to a period of incarceration of such duration that the parent will not be able to care for the child for an extended period of time, considering the child's age and his need for a safe, stable, and permanent home; and despite notice by the department, the parent has refused or failed to provide a reasonable plan for the appropriate care of the child other than foster care.
(7) The relinquishment of an infant pursuant to Chapter 13 of Title XI of this Code.
(8) The commission of a felony rape by the natural parent which resulted in the conception of the child.